MARGRIT MEIER d/b/a
Hartland Inn,

    Plaintiff,

v.                   Case No. 23-cv-0158-bhl

WADENA INSURANCE COMPANY,

    Defendant,

## ORDER GRANTING MOTION TO DISMISS

   Plaintiff Margrit Meier last appeared before this Court two years ago in the similarly named *Meier v. Wadena Insurance Company*, No. 20-cv-1025-bhl, 2021 WL 3679614 (E.D. Wis. Aug. 19, 2021). That case, like this one, concerned Wadena's alleged refusal to remit Meier the "actual cash value" of her insured property. The first time around, Meier jumped the gun, filing her lawsuit without completing her policy's contractually mandated appraisal process, so the Court dismissed her claims as premature. *Id.* at *2. But the appraisal process is now complete, and Meier is unsatisfied with the result. She has, thus, returned, renewing her claims for breach of contract and bad faith, while additionally seeking to set aside the appraisal award. Wadena has again moved to dismiss, insisting Meier is bound by that award. Because Meier agreed to resolve disputes over "actual cash value" according to an appraisal process, and because that process was not facially defective, Wadena's motion will be granted.

## BACKGROUND[1]

   Margrit Meier owned and operated Hartland Inn—a restaurant located in Hartland, Wisconsin—until June 29, 2019, when the property sustained serious fire damage. (ECF Nos. 1-7 ¶5; 11 at 1.) Meier had insured her restaurant with a policy from Wadena Insurance Company that covered precisely this type of peril. (ECF No. 1-7 ¶6.) Under her Wadena policy, Meier was

---

[1] These facts are derived primarily from Meier's complaint, ECF No. 1-7, the allegations in which are presumed true when considering a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007).

entitled to the "actual cash value" of her property (without defining the term[2]) subject to a $1,113,420 per building limit. (ECF Nos. 1-7 ¶8; 9 at 4; 10-1 at 88.) On August 19, 2019, Wadena paid Meier $775,000 on her claim, an amount she believed underestimated Hartland Inn's "actual cash value." (ECF No. 1-7 ¶¶10-11.)

According to Meier, Wadena arrived at the $775,000 figure through use of the "broad evidence" rule. (*Id.*) "Under the broad evidence rule, parties are entitled to introduce evidence of every fact and circumstance which would logically tend to the formation of a correct estimate of the loss." *Thorne v. Members Select Ins. Co.*, 882 F.3d 642, 646 (7th Cir. 2018) (quoting *Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349, 356 (Ind. 1982) (internal quotations omitted)); *see Doelger & Kirsten, Inc. v. Nat'l Union Fire Ins. Co.*, 167 N.W.2d 198, 200 (Wis. 1969) (adopting this statement of the rule in Wisconsin). In other words, rather than simply calculate the cost to replace the Hartland Inn less depreciation, Meier contends that Wadena considered a variety of other evidence, including the property's assessed value, sales approach value, cost approach value, and actual cost value, and advanced Meier the average of those sums. (ECF No. 1-7 ¶10.)

In response, Meier retained Miller Public Adjusters, who estimated that the actual cash value of Hartland Inn exceeded the $1,113,420 building limit. (*Id.* ¶11.) After receiving this estimate, Wadena remitted to Meier an additional $60,135.79. (*Id.* ¶12.) Believing this additional payment insufficient, Meier invoked the appraisal clause in her Wadena policy, (*id.* ¶13), which provided:

> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

(*Id.* ¶13; ECF No. 10-1 at 87.)

But then, preempting the very process she invoked, Meier filed her first lawsuit against Wadena in this Court, asserting claims for breach of contract and bad faith. *Meier*, 2021 WL 3679614, at *1. She also asked the Court to declare use of the broad evidence rule illegal. *Id.*

---

[2] According to Meier, a company affiliated with Wadena, IMT Insurance Company, states on its website that the phrase means the "cost to replace property with new property of like kind and quality, less depreciation." (ECF No. 11 at 2.)

Wadena moved to dismiss on the grounds that the parties had not yet completed the appraisal dispute resolution procedure, a prerequisite to federal litigation. *Id.* at *2. In an Order dated August 19, 2021, the Court granted Wadena's motion and dismissed Meier's case. *Id.* at *3. The Court also declared that Wisconsin law "neither prohibits nor requires" use of the broad evidence rule. *Id.*

Their brief sojourn into federal court concluded, the parties then proceeded with the appraisal dispute resolution process required by Meier's policy. Meier selected appraiser Paul Hausz, and Wadena selected appraiser Mark Stromberger. (ECF No. 1-7 ¶15.) The appraisers chose William Marske as umpire. (*Id.*) Because the appraisers could not reach an agreement, they submitted their differences to Marske. (ECF No. 9 at 7.) He concluded that Hartland Inn's actual cash value was $939,136.58, about $100,000 more than Wadena had previously offered. (*Id.*) Stromberger agreed with Marske's valuation, and under the plain terms of the policy, this determination of the amount of loss became binding. (ECF No. 1-7 ¶16.) Hausz refused to sign on, however, explaining that he disagreed with Stromberger's and Marske's use of the broad evidence rule to calculate actual cash value. (*Id.*)

Less than a month later, Meier filed this lawsuit in Outagamie County Circuit Court, naming both Wadena and the appraisal umpire, Marske, as defendants. (*Id.* ¶¶3-4.) She asserted claims for breach of contract and bad faith and sought to set aside the appraisal award, all on the grounds that Wisconsin law prohibited use of the broad evidence rule to calculate Hartland Inn's actual cash value. (*Id.* ¶¶17-38.) Marske moved to dismiss, and on February 2, 2023, the circuit court granted his motion. (ECF No. 9 at 8.) Five days later, Wadena invoked federal diversity jurisdiction and removed the case to this Court. (ECF No. 1.)

## JURISDICTION

Before addressing the pending motion, the Court must confirm its jurisdiction. Under 28 U.S.C. Section 1446(b)(1), a defendant has thirty days to file a notice of removal in a civil case. The Seventh Circuit applies this thirty-day window "to all removals, including those in which fraudulent joinder to defeat diversity is claimed." *Yount v. Shashek*, 472 F. Supp. 2d 1055, 1063 (S.D. Ill. 2006) (citing *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 n.4 (7th Cir. 1992)). Thus, where fraudulent joinder is obvious on the face of the complaint, a defendant should file for removal within thirty days of the service of the complaint, *not* within thirty days of the dismissal of the sham defendant. *See Poulos*, 959 F.2d at 73 n.4.

Wadena's answer, filed on November 2, 2022 in Outagamie Circuit Court, explicitly asserts that "Meier improperly named Mr. Marske as a party to attempt to defeat federal jurisdiction." (ECF No. 1-15 at 10.) Yet Wadena did not file its notice of removal until February 7, 2023, well over 100 days after service of the complaint. (ECF Nos. 1; 1-8.) The notice is, therefore, untimely.

This is not fatal. The Seventh Circuit has confirmed that "the time limitation imposed by [Section] 1446(b) is not jurisdictional." *N. Ill. Gas Co. v. Airco Indus. Gases*, 676 F.2d 270, 273 (7th Cir. 1982). Rather, it is a procedural requirement that "can be waived." *Poulos*, 959 F.2d at 73 n.4. Meier has not challenged removal and has, therefore, waived any objection based on the thirty-day time limit. And there is no question that the parties satisfy all other requirements of federal diversity jurisdiction. Jurisdiction is, thus, secure, and the Court can now turn to the substance of the motion to dismiss.

## LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inference in the plaintiff['s] favor." *Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). A complaint will survive if it "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ANALYSIS

Wadena characterizes this lawsuit as Meier's attempt to "thumb[] her nose" at the Court's decision in *Meier v. Wadena Insurance Company*, No. 20-cv-1025-bhl, 2021 WL 3679614 (E.D. Wis. Aug. 19, 2021). (ECF No. 9 at 3, 24.) The Court will refrain from making any findings on Meier's motives. But because the record confirms that Meier's lawsuit is an improper effort to sidestep the binding appraisal process required by the Wadena policy, Wadena's motion will be granted, and the complaint dismissed.

In *Farmers Automobile Insurance Association v. Union Pacific Railroad Company*, 768 N.W.2d 596, 604-06 (Wis. 2009), the Wisconsin Supreme Court confirmed that a policyholder who agrees to resolve claim valuation issues through an appraisal process is bound by the result of that process. Because the "obvious point of contracting for an appraisal process" is to submit

valuation decisions to experts chosen by the parties, rather than judges and juries, courts have a duty to enforce the parties' agreement and have "only limited power to review appraisal awards." *Id*. at 607. Appraisal awards are thus "presumptively valid" and "should not be lightly set aside," even if the Court would have arrived at a different valuation. *Id*. In other words, review is done with deference and humility; it is not the Court's job "to determine whether the third party experts accurately valued the item (as if the court itself could do a better job), but [merely] whether the third party experts understood and carried out the contractually assigned task." *Id*. "An appraisal may be set aside only upon the showing of fraud, bad faith, a material mistake, or a lack of understanding or completion of the contractually assigned task." *Id*. And judicial review is generally limited to the face of the award, not a post-mortem of the appraisers' analyses. *Id*. at 607-08.

Wadena argues that Meier has not plausibly pleaded breach of contract, bad faith, or a reason to set aside the appraisal award. "A complaint states a claim for breach of contract when it alleges: (1) a contract between the plaintiff and the defendant that creates obligations flowing from the defendant to the plaintiff; (2) failure of the defendant to do what it undertook to do; and (3) damages." *Brew City Redev. Grp., LLC v. The Ferchill Grp.*, 714 N.W.2d 582, 588 (Wis. Ct. App. 2006). Nothing in Meier's complaint satisfies the second element. Wadena participated in the contractually mandated dispute resolution process and paid Meier $939,136.58, consistent with that process' binding outcome.

Meier's untenable position is that Wadena, through Appraiser Stromberger and Umpire Marske, violated the terms of the policy when it applied the broad evidence rule to calculate Hartland Inn's actual cash value. But she "provides no authority for interpreting appraisal panel awards . . . to imply breach of contract." *Park Meadows Home Ass'n, Inc. v. Am. Fam. Mut. Ins. Co.*, 934 N.W.2d 581, 2019 WL 3139842, at *7 (Wis. Ct. App. 2019). Indeed, according to Meier's complaint, Wadena did *not* breach the contract; it did precisely "what it undertook to do." *See 70th Ct. Condo Ass'n v. Ohio Sec. Ins. Co.*, No. 16 CV 07723, 2016 WL 6582583, at *6 (N.D. Ill. Nov. 7, 2016) ("[Insurer] did not breach its obligations when it paid a claim based on a binding appraisal."); *Travelers Prop. Cas. Co. of Am. v. Marion T, LLC*, No. 1:07-cv-1384-WTL-DML, 2010 WL 1936165, at *5 (S.D. Ind. May 12, 2010) ("[Defendant] paid the amount arrived at by the appraisal process . . ." so Plaintiff "has failed to demonstrate any breach of contract by [Defendant].").

When she executed her insurance policy with Wadena, Meier agreed to resolve disputes over "actual cash value" according to a specific appraisal process. That process required she and Wadena to each "select a competent and impartial appraiser." (ECF No. 10-1 at 87.) Those appraisers would in turn "select an umpire." (*Id.*) "A decision agreed to by any two [of these three actors would] be binding." (*Id.*) Meier does not claim that Wadena failed to select "a competent and impartial appraiser." *Cf. Coppins v. Allstate Indem. Co.*, 857 N.W.2d 896, 907 (Wis. Ct. App. 2014) (allowing a breach of contract claim pursuant to a similar policy because the insured alleged that the insurer "deliberately . . . hir[ed] an incompetent appraiser"). Nor does she allege that Wadena paid her any less than what two of the three members of the appraisal panel concluded she was entitled to. *See Villas at Winding Ridge v. State Farm Fire and Cas. Co.*, 942 F.3d 824, 831 (7th Cir. 2019) (holding that an insurer did not breach a contract when it paid for coverage consistent with an appraisal award). Her gripe is with the method she contends the appraisal panel used to calculate her award. But the contract did not obligate Wadena to police the panel. In fact, the policy, by its very terms, prevented Wadena from second-guessing the outcome the panel reached. (ECF No. 10-1 at 87 ("A decision agreed to by any two will be *binding*.") (emphasis added).) Meier could have, of course, negotiated for a provision that would have assigned Wadena a more active role in the dispute resolution process. But she did not. And freedom to contract necessarily entails freedom to enter into contracts that one might ultimately regret. *See Farmers*, 768 N.W.2d at 606-07 ("An appraisal process is an agreement by parties to a contract to allow third party experts to determine the value of an item.").

This Court has no authority to rewrite the terms of the policy Meier entered into. Nor is it the Court's job to interrogate the appraisers' analysis. Yet these are precisely the remedies Meyer seeks. She asks the Court to find that Wadena initially used the broad evidence rule to calculate the value of Hartland Inn and then improperly influenced the panel to do the same by supplying an "Agreement for Submission to Appraisers" that contained multiple variations of the following language: "When determining [actual cash value], the Broad Evidence Rule is used in the state of Wisconsin." (ECF No. 1-7 at 18-20.) This argument misunderstands the limited review courts apply to appraisal or other alternative dispute resolution processes. As the Wisconsin Supreme Court explained in detail in *Farmers*, such processes are favored because they "promote finality, are time and cost-efficient, and place a difficult factual question—the replacement value of an item—into the hands" of experts, not the court system. 768 N.W.2d at 607. If Meier disagreed

with Wadena's arguments before the appraisers, her remedy was to challenge them in that proceeding. For this Court to do as Meier requests and second guess the appraisers' analyses or conclusions is improper and would risk undermining the entire process. Hence, judicial review is usually limited to the face of the award. *Id*. More expansive analysis, *e.g.*, permitting parties to reargue legal and factual points the appraiser's rejected, would erode the benefits (finality, efficiency, and expertise) the appraisal process provides.

Meier agreed to funnel disputes over actual cash value into a binding appraisal process. She cannot now assert that Wadena breached the contract by complying with that very process (which she invoked) simply because she is unhappy with the outcome she received. Put another way, if the contract did not contain a dispute resolution provision, Meier could have filed immediately in federal court and alleged breach of contract, arguing that Wadena's application of the broad evidence rule contravened the policy it issued. But the parties decided, instead, to submit this kind of dispute to an appraisal panel. *See Farmers*, 768 N.W.2d at 607. Given the parties' agreement, it would have been a breach for Wadena to rebuff the appraisal process or refuse to pay out an award that at least two of the appraisal panel members agreed to. But that did not happen, and Meier cannot now ask this Court to reconsider a matter the contract was written to resolve through other means. The Court, therefore, concludes that Meier has not stated a claim for breach of contract. This holding also disposes of her claim for bad faith. *See Brethorts v. Allstate Prop. and Cas. Ins. Co.*, 798 N.W.2d 467, 482 (Wis. 2011) ("[S]ome breach of contract by an insurer is a fundamental prerequisite for a first-party bad faith claim against the insurer by the insured.").

Breach of contract claims aside, the mere fact that Wadena paid Meier an $939,136.58 award does not mean the award itself is unimpeachable. While appraisal awards are "presumptively valid," they can be set aside based on a "showing of fraud, bad faith, a material mistake, or a lack of understanding or completion of the contractually assigned task." *Farmers*, 768 N.W.2d at 607. Meier invokes the final exception, accusing the appraisers of misunderstanding their contractually assigned task: to determine Hartland Inn's "actual cash value." But actual cash value is exactly what the appraisal award purports to calculate. (ECF No. 1-7 at 24.) Meier dislikes the number the appraisers arrived at and the method they used to get there. "Actual cash value," though, is never a matter of mathematical certainty, and there is no single correct method for calculating it. In this way, it is not dissimilar to body fat. Medical

practitioners commonly use two different tools to calculate a patient's body fat percentage: skinfold calipers and Dual-energy X-ray absorptiometry (DEXA) scans. *See* D.R. Wagner & V.H. Heyward, *Techniques of Body Composition Assessment: A Review of Laboratory & Field Methods*, 70(2) Rsch. Q. for Exercise & Sport, 135 (1998). The techniques virtually always produce slightly different results. But neither is "wrong." And if a party to a contract agrees to have her body fat determined by an appraisal panel, and that panel uses the DEXA method, the party cannot seek reversal on the grounds that the panel should have used skinfold calipers. Yet that is essentially the basis for Meier's lawsuit. Her complaint is not that the appraisers failed to calculate "actual cash value"; it is that they did so according to the broad evidence rule, a viable method but not her preference. The debate over expert methodology, however, is not for resolution in this Court. "Ultimately, the greater danger in reviewing appraisal awards is not an unjust award, but litigants second-guessing an award obtained as a result of a process to which they agreed." *Farmers*, 768 N.W.2d at 608.

Meier analogizes her case to *Coppins*, where the Wisconsin Court of Appeals took the extraordinary step of vacating an appraisal award. Meier's situation, though, is more akin to that of the insured in *Farmers*. Just like Meier, the insured in *Farmers* challenged an appraisal "award on the grounds that the appraisers did not understand their role in the process." 768 N.W.2d at 608. The Wisconsin Supreme Court rejected that argument because "the face of the award demonstrate[d] that the appraisers understood and accomplished their contractual task." *Id.* The same applies to the appraisal award in this case. It compiles the estimates of various experts and averages them to reach the actual cash value of Hartland Inn. (ECF No. 1-7 at 24-26.) Calculating actual cash value—not calculating actual cash value according to any particular methodology—was the assigned task. And the appraisers completed it. Had they, instead, returned an award that estimated Hartland Inn's sentimental value, Meier would have a point. *See Quinn v. New York Fire Ins. Co.*, 126 N.W.2d 211 (Wis. 1964) (setting aside an appraisal award that did not calculate "actual cash value" as the contract required). But nothing in the contract, nor in Wisconsin law prohibits use of the broad evidence rule to determine actual cash value as a general matter.

Meier's repeated appeals to *Coppins* do not alter this fundamental conclusion. In *Coppins*, the Wisconsin Court of Appeals held that the appraiser "did not understand how to calculate 'actual cash value'" because he employed a "free-for-all" method "based on nothing more than feelings." 857 N.W.2d at 905. The appraisal award in this case contains no such mathematically averse,

nebulous analysis. The actual cash value estimates the appraisers used came from sources like "certified general commercial appraiser[s]," not "the mercurial sentiments of unqualified passersby." (ECF No. 1-7 at 24.) Also unlike *Coppins*, the appraisers in Meier's case did not inexplicably assign lesser weight to the traditional actual cash value estimate (replacement cost less depreciation). *See Coppins*, 857 N.W.2d at 905. Nor did the appraisers "essentially substitute[] market value for actual cash value." *Id.* at 907; (ECF No. 1-7 at 24) (considering market value as well as replacement cost less depreciation). And ultimately, *Coppins* is not binding precedent in this Court. To the extent it attempts to limit use of the broad evidence rule pursuant to a contract that imposes no such limitation, it is inconsistent with well-established Wisconsin caselaw. *See Doelger & Kirsten, Inc. v. Nat'l Union Fire Ins. Co.*, 167 N.W.2d 198, 200 (Wis. 1969) ("[T]his court has consistently followed what has been termed the 'broad evidence rule' giving considerable leeway and latitude to the trier of facts."). Meier cannot, therefore, show any reason to set aside the appraisal award, and her complaint must be dismissed.

## CONCLUSION

For the forgoing reasons,

**IT IS HEREBY ORDERED** that Wadena Insurance Company's Motion to Dismiss, ECF No. 8, is **GRANTED**, and the case is **dismissed**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on June 5, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge